# UNITED STATES DISTRICT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WALKWELL INTERNATIONAL LABORATORIES, INC., | **Case No. 1:13-cv-0199-EJL-REB** |
| Plaintiff, | |
| vs. | **MEMORANDUM DECISION AND ORDER** |
| NORDIAN ADMINISTRATIVE SERVICES, LLC., | |
| Defendant. | |

Plaintiff Walkwell International Laboratories, Inc. ("Plaintiff" or "Walkwell") filed the instant action against Defendant Noridian Administrative Services, LLC[1] ("Defendant" or "Noridian"), alleging violation of the Administrative Procedures Act, 5 U.S.C. §706(2)(A), tortious interference with prospective economic advantage and negligence.[2]  Pending before this Court is Defendant's Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c).

---

[1] Noridian Administrative Services, LLC now operates under the name of Noridian Healthcare Solutions, LLC.  (Dkt. 11, ¶ 2.)

[2] Plaintiff's Complaint also alleged breach of contract.  However, in response to Defendant's Motion for Judgment on the Pleadings, Plaintiff conceded dismissal of the breach of contract claim is appropriate.  (Dkt. 22, p. 2.)  The Court will accordingly limit its analysis to Plaintiff's Administrative Procedures Act, tortious interference with prospective economic advantage, and negligence claims.

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs.  Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.  For the reasons set forth below, the Court hereby **GRANTS** Defendant's Motion for Judgment on the Pleadings.

## BACKGROUND

The Medicare Program, established under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395hhh, provides coverage for certain medical items and services to eligible aged and disabled people.  The Medicare statute is divided into five "Parts."  Part A provides insurance coverage for inpatient hospital care and other institutional services.  42 U.S.C. § 1395c to 1395i-5.  Part B is a voluntary program that provides supplemental medical insurance for, among other things, covered "medical and other health services," including physician services, and medical supplies such as durable medical equipment ("DME").  §§ 1395j to 1395w-5.  Part C of Medicare governs the "Medicare Advantage" program, which offers Medicare beneficiaries a managed care alternative to the traditional Part A and Part B fee-for-services system.  42 U.S.C. §§ 1395w-21 to 1395w-29.  Part D

provides a prescription drug benefit program, 42 U.S.C. §§ 1395w-101 to 1395w-154, and Part E contains various "Miscellaneous Provisions."  42 U.S.C. §§ 1395x to 1395kkk-1.

Medicare Part B is relevant to this case.  Walkwell is a private manufacturer of ankle foot orthotics, a product classified as DME.[3]  42 U.S.C. § 1395k.  After a DME supplier fills a Medicare beneficiary's DME prescription, the supplier may seek payment from Medicare under Medicare Part B.  To obtain payment, the supplier submits a claim with, *inter alia*, the Healthcare Common Procedure Coding System ("HCPCS") code or codes that identify the specific type of DME provided to the beneficiary.  Assuming Medicare eligibility, coverage, and/or other payment requirements are satisfied, Medicare pays the supplier the amount associated with the reported HCPCS code(s).  For DME such as Walkwell's ankle foot orthotic, each HCPCS code has a reimbursement dollar amount based on what is provided to the patient.  Therefore, the more codes a product is assigned, the greater the reimbursement value is to the supplier.

Walkwell is not a Medicare-certified healthcare provider or supplier that submits claims for Medicare reimbursement.  However, manufacturers of DME, such as Walkwell, may seek HCPCS coding guidance and assistance from the Price, Data Analysis, and Coding ("PDAC") contractor for the Centers for

---

[3] Examples of DME include power wheel chairs, back and knee braces, and orthotics.

Medicare & Medicaid Services ("CMS").  The Secretary of the United States

Department of Health and Human Services ("HHS"), acting through CMS,

administers Medicare Part B by means of contracts with private entities referred to

as Medicare administrative contractors.  42 U.S.C. §§ 1395u(a) ("The

administrative of [Part B] shall be conducted through contracts with Medicare

administrative contractors under section 1395kk-1 of this title.").  The PDAC is

one type of Medicare administrative contractor.  At all relevant times, Noridian

was the PDAC contractor for Idaho.

Through a process known as coding verification, the PDAC contractor

assists suppliers and manufacturers in determining which HCPCS code(s) may be

used to classify a DME item for the purpose of billing Medicare.  Level II of

HCPCS, which applies to DME, is a standardized, national alpha-numeric coding

system created and maintained by Medicare and used by Medicare, Medicaid, and

commercial insurance plans to process claims.  For each alphanumeric HCPCS

code, there is descriptive terminology that identifies the basic characteristics of like

items.  CMS, and not the PDAC contractor, writes such code descriptors.[4]

---

[4] The information on HCPCS coding is excerpted from Exhibit 1 to Defendant's Motion
for Judgment on the Pleadings.  (Dkt. 18-1, Ex. 1).  Exhibit 1 is a document published on
CMS's official website, "HCPCS Level II Coding Procedures,"
www.cms.gov/Medicare/Coding/MedHCPSGenInfo/HCPCSCODINGPROCESS.html
(last visited July 22, 2013).  As a publication from an official government website,
Exhibit 1 is subject to judicial notice.  *NRDC v. Kempthorne*, 539 F.Supp.2d 1155, 1167
(C.D. Cal. 2008).  The Court **GRANTS** Defendant's request to take judicial notice of

In 2011, Walkwell chose to seek HCPS coding verification assistance from Noridian for several of Walkwell's ankle foot orthotics.[5]  On April 27, 2011, Walkwell attended a meeting with Noridian's coding committee to present Walkwell's official application for review of the Stepwell Custom ankle foot orthotic ("STEP001").  Walkwell requested that the STEP001 receive five HCPCS codes.  On July 7, 2011, Walkwell received a coding determination from Noridian assigning the STEP001 with four of the five requested codes.  Walkwell thereafter decided not to request reconsideration of Noridian's determination, and instead began the process of reengineering the molded inner boot on their device to better adapt to the requirements of the omitted code ("L2280").  Walkwell also began marketing the STEP001 as having four codes.

On August 3, 2011, Walkwell again met with the coding committee for Noridian to present Walkwell's official application for review of the newly designed Stepwell Custom ankle foot orthotic ("STEP002") with a different

Exhibits 1, as well as Exhibits 2-4, which are also publications from an official government website.  Defendant also requested that the Court take judicial notice of Exhibit 5-A, the PDAC Contract between Noridian and CMS, because the contract was incorporated by reference into Plaintiff's Complaint.  (Dkt. 18-6.)  Exhibit 5-A was incorporated by reference into Plaintiff's breach of contract claim, which is no longer at issue because Plaintiff concedes that its breach of contract claim should be dismissed. The Court accordingly **DENIES** Defendant's request to take judicial notice of Exhibit 5-A, and has not considered the PDAC Contract in its analysis.

[5] The following facts are taken from Plaintiff's complaint (Dkt. 1-3), and must be accepted as true for the purposes of deciding Defendant's motion.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

custom-molded boot.  Walkwell requested the same five codes it previously

requested in its submission of the STEP001.  On September 15, 2011, Walkwell

received a letter from Noridian stating that Walkwell's request for code L2280 had

again been rejected.  Walkwell filed a request for reconsideration, which Noridian

rejected, stating reconsideration of coding decisions was impossible.  Walkwell

continued its marketing of the STEP001 and also entered the market with the

STEP002.

On October 13, 2011, Walkwell once again appeared before Noridian's

coding committee and presented applications and samples for two additional

devices, the "STEP003" and "STEP004."  Walkwell requested a single code for

the STEP003 and three codes for the STEP004.  On December 12, 2011, Walkwell

received four e-mail letters from Noridian assigning a different code than that

requested to the STEP003, granting the three requested codes for the STEP004,

and stating that the STEP001 and STEP002 had been reviewed and the initial

coding decision overturned.  The latter determination had the effect of removing

one of the codes previously awarded to both the STEP001 and STEP002, code

L2340, from both devices.

Between the months of July through December 2011, Walkwell had

marketed the STEP001as having four codes, including code L2340.  Walkwell had

similarly marketed the STEP002 as having four codes, including code L2340, from

the time Noridian approved such code in September 2011 until the December 2011 revocation.  Noridian revoked code L2340 from both the STEP001 and the STEP002 unilaterally and without warning.  Further, prior to the December 2011 revocation, Noridian never warned Walkwell that code L2340 was in jeopardy, even though Noridian knew Walkwell was actively marketing the STEP001 and STEP002 as having four custom codes.  Based on the original four codes assigned to the STEP001 and STEP002, many health care providers purchased the product and many others expressed interest in doing so.  However, when Noridian revoked code L2340, Walkwell lost numerous orders and suffered substantial decreased interest in its product.

Walkwell brings a claim for violation of the Administrative Procedures Act, 5 U.S.C. § 701 *et. seq*  ("APA"), suggesting Noridian's unilateral re-review and revocation of code L2340 from the STEP001 and STEP002, as well as the disallowance of code L2280 for the STEP001 and STEP002, constituted arbitrary and capricious agency action under 5 U.S.C. § 706(2)(A).  Walkwell also alleges Noridian's revocation of code L2340 from both the STEP001 and STEP002 improperly interfered with Walkwell's relationships with its clients and prospective clients, constituting tortious interference with prospective economic advantage.  Finally, Walkwell suggests Noridian unreasonably denied Walkwell's request for code L2280 to the STEP001 and STEP002, unreasonably revoked code

L2340 from both the STEP001 and STEP002, and unreasonably assigned a different code than that requested for Walkwell's STEP003.  Walkwell claims the aforementioned actions pertaining to the assignment of codes to the STEP001, STEP002 and STEP003 were improper and amounted to negligence.

Walkwell filed suit in state court on April 3, 2013.[6]  Noridian filed a notice of removal on April 26, 2013.  (Dkt. 1.)  Noridian moved to extend the time to respond to Walkwell's complaint in order to discuss the possibility of the federal government representing Noridian in this litigation with CMS and the Department of Justice ("DOJ").  (Dkt. 6.)  The Court granted Noridian's extension request in part (Dkt. 9), and Noridian answered Walkwell's complaint and counterclaimed on May 24, 2013.  (Dkt. 12.)  In late June, Noridian was notified that, pursuant to 28 U.S.C. § 517, the DOJ had approved Noridian's request to provide representation in this matter.  DOJ counsel entered an appearance on June 27, 2013.  On July 24, 2013, Noridian filed the instant Motion for Judgment on the Pleadings.  (Dkt. 18.)

### STANDARD OF REVIEW

Motions for a judgment on the pleadings are governed by Federal Rule of Civil Procedure 12(c).  The principal difference between motions filed pursuant to

---

[6] Walkwell initially filed suit in state court in April 2012, but voluntarily dismissed its complaint without prejudice in May 2012.  (Dkt. 18-1, n. 5.)  Noridian's counterclaim arises out of Walkwell's alleged breach of the parties' agreement which led to dismissal of the 2012 action.  (*Id*.)  As neither party addresses Noridian's counterclaim in their briefing on Defendant's Motion for Judgment on the Pleadings, the Court will not consider Noridian's counterclaim here.

Federal Rule of Civil Procedure 12(b) and Rule 12(c) is the time of filing. *Dworkin v. Hustler Magazine Inc*., 867 F.2d 1188, 1192 (9th Cir. 1989).  A party may move for a judgment on the pleadings at any point after the pleadings close. Fed. R. Civ. P. 12(c).  "Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog." *Dworkin*, 867 F.2d at 1192.

A motion pursuant to Rule 12(b)(6) or Rule 12(c) challenges the legal sufficiency of the claims stated in the complaint.  *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011).  To sufficiently state a claim to relief and survive such motion, the pleading "does not need detailed factual allegations," however, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do[.]"  *Id*. (citations omitted).  Rather, there must be "enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id*. at 556.  The plausibility standard is not akin to a "probability requirement," but does require more than a sheer possibility that a defendant acted unlawfully.  *Id*.

In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court identified two "working principals" that underlie *Twombly*.  First, although a court must accept as true all factual allegations in a complaint when ruling on 12(b)(6) or 12(c) motion, the court need not accept legal conclusions as true.  *Id*.  "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id*. at 678-79.  Second, only a complaint that states a plausible claim for relief will survive a motion to dismiss.  *Id*. at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*.

In light of *Twombly* and *Iqbal*, the Ninth Circuit has summarized the governing standard as follows:  "In sum, for a complaint to survive a motion to dismiss [or Rule 12(c) motion], the nonconclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv*., 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation and citation omitted).  Apart from factual insufficiency, a complaint is also subject to dismissal where it lacks a cognizable legal theory, *Balistreri v. Pacifica Police Dept*., 901 F.2d 696, 699 (9th Cir. 1990), or where the

allegations on their face show that relief is barred for a legal reason. *Jones v. Bock*, 549 U.S. 199, 215 (2007).

## ANALYSIS

### A. Walkwell's APA Claim

Walkwell claims the coding verification decisions Noridian made on Walkwell's STEP001 and STEP002 ankle foot orthotics violated the APA. (Dkt. 1-3, ¶¶ 29-31.) Specifically, Walkwell maintains Noridian violated 5 U.S.C. § 706(2) by unilaterally re-reviewing, amending and removing code L2340 from the STEP001 and STEP002, and by disallowing code L2280 for the STEP001 and STEP002. Under section 706(2)(A) of the APA, an agency action must be upheld unless it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The party challenging an agency's action as arbitrary and capricious bears the burden of proof. *WildEarth Guardians v. Salazar*, 741 F.Supp.2d 89, 97 (D.D.C. 2010) (citation omitted).

Review of agency actions is "highly deferential," "presume[es] the agency action to be valid," and requires that the Court affirm the agency action "if a reasonable basis exists for its decision." *Northwest Ecosystem Alliance v. U.S. Fish and Wildlife Serv*., 475 F.3d 1136, 1140 (9th Cir. 2007) (citation omitted). The court is not to substitute its judgment for that of the agency, and deference to

the agency's technical expertise and experience is particularly important with respect to questions involving scientific matters.  *Id.*; *Mt. Graham Red Squirrel v. Espy*, 986 F.2d 1568, 1571 (9th Cir. 1993) (citation omitted).  However, "the presumption of agency expertise may be rebutted if the decisions, even though based on scientific expertise, are not reasoned."  *Greenpeace v. National Marine Fisheries Serv.*, 80 F.Supp.2d 1137, 1147 (W.D. Wash. 2000).

Walkwell fails to adequately allege an APA claim in at least two respects.  First, it is not clear that Noridian, a private entity with a contract with CMS to provide PDAC coding guidance, is an "agency" within the meaning of the APA.  By its own language, "the APA does not extend to an entity that is not a federal agency[.]"  *W. State Univ. of S. Cal. v. Am. Bar Ass'n*, 301 F.Supp.2d 1129, 1133 (C.D. Cal. 2004); *McKinney v. Caldera*, 141 F.Supp.2d 25, 31 (D.D.C. 2001) ("A fundamental prerequisite to APA review is that the judicial challenge be to 'agency' action.").  Medicare administrative contractors such as Noridian, though they receive federal funds and act as agents for HHS, do not necessarily constitute an agency within the meaning of the APA.  *See, e.g., Kaiser Foundation Hospitals v. Sebelius*, 649 F.3d 1153, 1155 (9th Cir. 2011) (*quoting Irvine Med. Ctr. v. Thompson*, 275 F.3d 823, 826 (9th Cir. 2002) (fiscal intermediaries function as agents for the Secretary of HHS).

Plaintiff suggests Noridian is an agency because it is mandated with the authority to provide coding determinations, is funded by CMS, and is charged with the function to render coding determinations.  (Dkt. 22, p. 9.)  However, the fact that CMS created the role of PDAC contractor does not mean Noridian is a federal agency because even where the government has established a government position or federal entity, such government action does not transform the government position or federal entity into an APA agency.[7]  *McKinney*, 141 F.Supp.2d at 33 (holding that the Judge Advocate General, a statutorily-created legal position appointed by the President, was not an APA agency); *Lombardo v. Handler*, 397 F.Supp. 792, 793 (D.D.C. 1975), *aff'd*, 546 F.2d 1043 (D.C. Cir. 1976) (National Academy of Sciences was not an "agency" under the APA despite fact it was established by Act of Congress).  The receipt of federal funds is also not determinative of whether an entity is an agency.  *Dong v. Smithsonian Inst.*, 125 F.3d 877, 882 (D.C. Cir. 1997) (Smithsonian is not a federal agency although it receives "extensive federal funding and must submit a detailed annual statement of expenditures to Congress[.]").   Finally, the fact that Nordian is mandated with the authority to render coding determinations does not mean Noridian is a federal agency because Noridian's authority derives from and is subordinate to CMS.

---

[7] Although CMS created the role of PDAC contractor it did not create Noridian, a private entity.  Instead, CMS awarded the PDAC contract to Noridian after a competitive procurement among existing third-party entities.  (Dkt. 18-1; Ex. 3.)

(Dkt. 18, Ex. 3) (stating the PDAC contractor shall perform its responsibilities under the direction of CMS); *Baxter Healthcare Corp. v. Weeks*, 643 F.Supp.2d 111, 113 (D.D.C. 2009) (CMS is responsible for maintaining and revising national HCPCS codes); *McKinney*, 141 F.Supp.2d at 34 (Judge Advocate General was not a federal agency because it was subordinate to the Department of the Army as a whole and was not vested with "substantial independent authority."). Walkwell has failed to allege facts to plausibly suggest Noridian is a federal agency under the APA.[8]

Second, even if Noridian could be considered a federal agency, Walkwell's APA claim is deficient because Walkwell fails to identify a specific statutory or regulatory basis which would support APA review. APA review "requires references to the legal duty [allegedly violated and] set forth in the governing substantive statute." *Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs*, 132 F.Supp.2d 876, 889 (D. Or. 2001). Because § 706(2)(A) of the APA "does not

---

[8] Although the PDAC contractor makes HCPCS coding determinations on behalf of the federal government, it appears HHS is the real party in interest. *Anderson v. Occidental Life Ins.* Co., 727 F.2d 855, 856 (9th Cir. 1984) ("The United States is the real party in interest in actions against Medicare carriers because recovery would come from the federal treasury."); *Matranga v. Travelers Ins. Co.*, 563 F.2d 677 (5th Cir. 1977); *see also Bushman v. Seiler*, 755 F.2d 653, 654, n. 2 (8th Cir. 1985) ("Intermediaries and carriers act on behalf of the Administrator in carrying out certain administrative responsibilities that the law imposes. Accordingly, their agreements and contracts contain clauses providing for indemnification with respect to actions taken on behalf of the Administrator and the Administrator is the real party of interest in any litigation involving the administration of the program.") (*quoting* 42 C.F.R. § 421.5(b) (1983)). As the parties have not briefed this issue, the Court will not further address it here.

create substantive rights," a plaintiff has "no right to sue for a violation of the APA in the absence of a 'relevant statute' whose violation 'forms the legal basis for [the] complaint.'" *El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*, 959 F.2d 742, 753 (9th Cir. 1991) (*citing* 5 U.S.C. § 702 and *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990)); *Or. Nat. Res. Council v. Thomas*, 92 F.3d 792, 800, n. 10 (9th Cir. 1996) ("[T]here can be no 'arbitrary and capricious' review under APA § 706(2)(A) independent of another statute."). Walkwell's complaint alleges "Noridian has violated 5 U.S.C. § 706(2)(A) by unilaterally re-reviewing, amending and removing [code] L2340 on both STEP0001 and STEP0002 [and by] disallowing [code] L2280 for STEP0001 and STEP0002," but fails to identify any other statute  Noridian purportedly breached.  (Dkt. 1-3, ¶¶ 30-31.)  Because Walkwell has not identified a "legal duty set forth in the governing substantive statute" against which Noridian's actions can be reviewed under § 706(2)(A) of the APA, Walkwell fails to adequately allege an APA claim.[9] *Nat'l*

---

[9] The only reference to violation of a federal statute in Walkwell's complaint appears in its prayer for relief, wherein Walkwell requests "an Order of this Court finding that the process under which Defendant has made determinations related to Plaintiff's products is arbitrary, capricious, and otherwise contrary to the process set out in Title XVIII of the Social Security Act."  (Dkt. 1-3, p. 9.)  Title XVIII of the Social Security Act refers to the entire Medicare Act, which is "embodied in hundreds of pages of statutes and thousands of pages of often interrelated regulations[.]"  *Shalala v. Illinois Council on Long Term Care, Inc*., 529 U.S. 1, 13 (2000).  As Defendant notes, such an indeterminate reference to a massive statutory scheme does not discharge Plaintiff's burden to allege a plausible APA claim by more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  (Dkt. 18-1, pp. 11-12) (*citing Iqbal*, 556 U.S. at 678).

*Wildlife Fed'n*, 132 F.Supp.2d at 889; *see also Preferred Risk Mut. Ins. Co. v. U.S.*, 86 F.3d 789, 792-93 (8th Cir. 1996) (rejecting APA claim where Plaintiff did not provide a substantive regulation that could provide the basis for APA judicial review).

In response to Defendant's Motion for Judgment on the Pleadings, Plaintiff does not identify a substantive statute or regulation Noridian allegedly violated, but instead contends Walwell's interests fall within the zone of interests sought to be protected under Medicare's payment scheme, 42 U.S.C. § 1395m.  (Dkt. 22, pp. 9-10.)  As a manufacturer of DME, and not a supplier, it is not clear that Walkwell's interests are, in fact, within the zone of interests protected under 42 U.S.C. § 1395m.  Section 1395m does not control manufacturers, and instead regulates Medicare contractors responsible for adjudicating and issuing Medicare payments for healthcare claims.  *See, e.g., Int'l Rehab. Sciences, Inc. v. Sebelius*, 688 F.3d 994, 997-98 (9th Cir. 2012) (summarizing Medicare Part B).  As the PDAC contractor, Noridian does not adjudicate or pay DME claims.  (Dkt. 18-1, p. 4, n. 3.)  However, even if Walkwell's interests could be considered as within the zone of interests protected under 42 U.S.C. § 1395m, Walkwell has failed to offer any explanation of how Noridian's conduct violated this provision.  (Dkt. 22, pp. 9-10.) As APA review is not available absent an "operative statute" with "clear guidelines" by which a court can review the "agency's" decisions, Walkwell fails

to adequately plead a claim for violation of the APA.  *Drake v. F.A.A.*, 291 F.3d

59, 70-71 (D.C. Cir. 2002).  The Court accordingly **GRANTS** Noridian's Motion

for Judgment on the Pleadings with respect to Walkwell's APA claim.


### B. Walkwell's Tort Claims

Walkwell's second count is for tortious interference with prospective

economic advantage, and its third count is for negligence.  Walkwell claims

Noridian tortiously interfered with Walkwell's prospective economic advantage by

amending code L2340 from both the STEP0001 and STEP0002.  (Dkt. 1-3, ¶¶ 37-

38.)  Walkwell maintains Noridian acted negligently by revoking code L2340 from

STEP0001 and STEP0002, by denying code L2280 from the STEP0001 and

STEP0002, and by assigning the STEP0003 with a different code than that

requested.  (*Id.*, ¶¶ 43-46.)  Walkwell's tort claims fail because the conduct

Walkwell challenges involves Noridian's performance of discretionary functions

that are within its duty as a Medicare contractor.  Noridian is therefore entitled to

official immunity from such claims.

### 1. *Official Immunity bars Walkwell's tort claims*

The Supreme Court has held that federal officials are absolutely immune

from state-law tort liability if "the challenged conduct [1] is within the outer

perimeter of an official's duties and [2] is discretionary in nature."  *Westfall v.*

*Erwin*, 484 U.S. 292, 300 (1988).  Although Congress partially supplanted *Westfall* as applied to federal officials, "the *Westfall* test remains the framework for determining when nongovernmental persons or entities are entitled to the same immunity."  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 72 (2d Cir. 1998); *Mangold v. Analytic Servs. Inc*., 77 F.3d 1442, 1446-50 (4th Cir. 1996) ("We believe the rationale for the protections articulated in . . . Westfall . . . also applies to the extent . . . this case involves a discretionary governmental function which has been delegated to the private sector."); *Group Health, Inc. v. Blue Cross Ass'n*, 739 F.Supp. 921, 931 (S.D.N.Y. 1990).

Under the *Westfall* test, Medicare contractors such as Defendant are immune from tort liability for discretionary acts taken in the performance of their official functions.  *Nichole Med. Equip. & Supply, Inc. v. Tricenturion, Inc*., 694 F.3d 340, 351 (3d Cir. 2012) ("TriCenturion and NHIC, as Medicare contractors, are entitled to immunity for discretionary conduct that falls within the outer perimeter of their official duties."); *Midland Psychiatric Assocs., Inc. v. U.S.*, 145 F.3d 1000 (8th Cir. 1998) (Medicare fiscal intermediary was entitled to official immunity against provider's tortious interference with contract claim arising out of intermediary's alleged wrongful denial of provider's Medicare claims); *Mangold*, 77 F.3d at 1447-48 (concluding that official immunity attaches to discretionary governmental functions even when they have been delegated to the private sector).

It is undisputed that Noridian's official function as the PDAC contractor is to provide coding determinations for DME equipment such as Walkwell's ankle foot orthotics. *See, e.g.*, Dkt. 1-3, ¶ 49 (stating "Noridian was awarded a contract which authorizes it to be the PDAC to make coding determinations for DME"); *Id.* ¶ 9 (alleging that Noridian is the "PDAC provider who is a private contractor that makes coding determinations for DME for [CMS]."); Dkt 18-1, Ex. 4 ("The PDAC is responsible for providing suppliers and manufacturers with assistance in determining which HCPCS code should be used to describe [DME] items for the purposes of billing Medicare.").

Noridian's function of providing coding determinations is also discretionary in nature. The PDAC contractor applies technical expertise and judgment in determining which, if any, HCPCS codes should be used to describe DME items for purposes of Medicare function. (Dkt. 18-1, Ex. 3) ("The PDAC MAC was developed because of the unique and specialized requirements that distinguish [DME] suppliers, claims processing, and statistical analyses from other similar functions . . . under Medicare.").  Identifying and applying relevant HCPCS codes to specific DME requires understanding of Medicare's "complex" "legal, policy and operating environment." (*Id.*)  Discretion inheres in this function. *Group Health*, 739 F.Supp. at 932 ("Decisionmaking on the part of fiscal intermediaries necessitates the exercise of discretion and considered judgment[.]").

Walkwell does not dispute that the *Westfall* test is applicable.  (Dkt. 22, p. 10.)  Instead, Walkwell contends that Noridian's conduct "was so egregious that it falls outside the scope of the immunity afforded by the *Westfall* test."  (*Id*.)  Walkwell contends state law controls the determination of whether a federal official was acting within the scope of employment under the *Westfall* test, and suggests conduct is outside the scope of employment under Idaho law if "the employee acts from purely personal motives . . . in no way connected with the employer's interest."  (*Id*., pp. 10-11) (citations omitted).  Walkwell argues the motives with which Noridian acted in revoking the L2340 code presents a question of fact, and suggests there "is ample evidence upon which it could be found that Noridian acted from purely personal motives in revoking the L2340 code."  (*Id*., p. 11.)  Although such evidence is absent from the Complaint, Walkwell's scope of employment argument also relies on the wrong test, as Walkwell invokes the test for scope of employment under the *Westfall Act*, or the Federal Employees Liability Reform and Tort Compensation Act, 28 U.S.C. § 2679(d)(1).  *See also Pauly v. U.S. Dept. of Agriculture*, 348 F.3d 1143, 1150 (9th Cir. 2003) ("Under the Federal Employees Liability Reform and Tort Compensation Act, known as the *Westfall Act*, a federal employee is immune from suit upon certification of the Attorney General that the employee was acting within the scope of his employment.").  However, Noridian's official immunity defense is rooted in

federal common law, and not federal statute.  Under federal common law, personal

motives are irrelevant to the official immunity analysis.  *Bushman v. Seiler*, 755

F.2d 653, 656 (8th Cir. 1985) (allegation that Defendant's action was prompted by

personal motives did not bar official immunity, as it "matters not that the grievance

is motivated by financial self-interest.") (internal quotation and citation omitted).

In *Bushman*, the Eighth Circuit considered plaintiff's claims that an

employee of a Medicare carrier committed libel and slander when he issued a letter

to an insurance company, after the insurance company's request for an

investigation of plaintiff podiatrists, which allegedly defamed plaintiffs' podiatry

practice.  *Id*.  At oral argument, plaintiffs conceded that defendant was acting

within the scope of his duties as a Medicare consultant when he sent the letter at

issue.  Plaintiffs argued, however, that the wrongful nature of the letter's contents

was sufficient to strip defendant of immunity.  The court rejected this argument,

finding it would unduly restrict the official immunity defense.  *Id*. at 656.  In so

holding, the court noted:

> [T]o separate the activity that constitutes the wrong from its surrounding
> context—an otherwise proper exercise of authority—would effectively
> emasculate the immunity defense.  Once the wrongful acts are excluded
> from an exercise of authority, only innocuous activity remains to which
> immunity would be available.  Thus, the defense would apply only to
> conduct for which it is not needed.

*Id*. (*quoting Wallen v. Domm*, 700 F.2d 124, 126 (4th Cir. 1983)).

Like plaintiffs in *Bushman*, Walkwell admits Noridian was acting within the scope of its duties as the PDAC contractor when it issued coding determinations for Walkwell's ankle foot orthotics, but suggests such determinations were improperly tainted by Noridian's personal motivations.  However, because Noridian was acting within its authority, and was exercising the discretion granted to it as the PDAC contractor when it issued the coding determinations, Noridian's personal motivations are irrelevant for purposes of official immunity.  *Id*., at 656, n. 3; *see also Ricci v. Key Bancshares of Maine, Inc*., 768 F.2d 456, 462 (1st Cir. 1985) ("[T]he malicious nature of the conduct is, for purposes of immunity analysis, irrelevant.  The conduct need only be the *kind* of action which, if done for legitimate purposes, falls within the scope of the official's authority.") (emphasis in original); *Barr v. Matteo*, 360 U.S. 564, 571-75 (1959) (the scope of official immunity is such that it cannot be defeated by allegations or proof of deliberate malice on the part of the federal official so charged, as long as the conduct in question falls within the "outer perimeter of [the official's] . . . line of duty."); *Evans v. Wright*, 582 F.2d 20, (5th Cir. 1978) (official immunity barred suit for tortious interference by providers of DME to Medicare patients against integrity specialists in Medicare program where defendants' actions, "even if misguided," were within the scope of defendant's investigative duties).

In *Little v. City of Seattle*, 863 F.2d 681, 683 (9th Cir. 1998), the Ninth Circuit noted that, in addition to involving conduct within the outer perimeter of official duties and the exercise of discretion, a court must also, "before granting official immunity," determine whether the "'official function would suffer under the threat of prospective litigation,'" and whether the benefits to effective government and the rule of law outweigh the costs imposed on the victims." (*quoting Saul v. Larsen*, 847 F.2d 573, 575 (9th Cir. 1988)).  The Court finds that policy considerations support extending official immunity to the PDAC contractor when issuing HCPCS coding determinations.  *See, e.g., Group Health*, 739 F.Supp. at 933 ("To subject fiscal intermediaries to suit in tort whenever they render an incorrect opinion would disrupt the proper functioning of the Medicare program as it is currently structured."); *Pani*, 152 F.3d at 73-74 ("The public interest in having Medicare fraud detected and prevented would be thwarted if these non-government entities, who have no personal financial interest in detecting or preventing Medicare fraud, were to find themselves facing damages suits for their efforts in doing so.")  Subjecting the PDAC contractor to suit in tort would inhibit the ability of Noridian and other Medicare administrative contractors to issue appropriate HCPCS coding determinations, as well as limit their function as independent decisionmakers.  *Group Health*, 739 F.Supp. at 933.

Noridian was acting within the scope of its authority as the PDAC contractor when it issued its discretionary HCPCS coding determination with respect to Walkwell's ankle foot orthotics.  Accordingly, Noridian is entitled to official immunity and Walkwell's tortious interference with prospective economic advantage and negligence claims must be dismissed.

   *2.  Walkwell's tort claims do not satisfy basic pleading requirements*

Even if Plaintiff's tort claims were not barred under the doctrine of official immunity, Plaintiff has failed to adequately plead either tortious interference with prospective economic advantage or negligence.  The elements of a cause of action for interference with prospective economic advantage are:

> (1)  [T]he existence of a valid economic expectancy; (2) knowledge of the expectancy on the part of the interferer; (3) intentional interference inducing termination of the expectancy; (4) the interference was wrongful by some measure beyond the fact of the interference itself, and (5) resulting damage to the plaintiff whose expectancy has been disrupted.

*Wesco Autobody Supply, Inc. v. Ernest*, 243 P.3d 1069, 1081, 149 Idaho 881 (Idaho 2010).

Walkwell fails to allege, other than in conclusory fashion, that Noridian's alleged interference was either intentional or that such interference was wrongful by some measure beyond the fact of the interference itself.  To establish wrongful interference, a plaintiff must provide proof that either: "(1) the defendant had an improper objective or purpose to harm the plaintiff; or (2) the defendant used wrongful means to cause injury to the prospective business relationship."  *Idaho*

*First Nat'l Bank v. Bliss Valley Foods, Inc.*, 824 P.2d 841, 861, 121 Idaho 266 (Idaho 1991).  Although Walkwell claims Noridian's action of amending code L2340 from both the STEP0001 and STEP0002 was "improper," the Complaint contains no facts, well-pleaded or otherwise, to support this conclusion or to explain why Noridian's coding determination was improper other than because it was contrary to Walkwell's coding request.[10]

Finally, in order to establish a cause of action for negligence, a plaintiff must allege:

> (1) A duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of duty; (3) causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage.

*Turpen v. Granieri*, 985 P.2d 669, 672, 133 Idaho 244 (1999).

Walkwell's complaint does not provide any non-conclusory facts to suggest Noridian's coding determinations breached a duty owed to Walkwell, and instead only asserts Noridian's actions were "unreasonable" and "improper."  (Dkt. 1-3, ¶¶ 43-46.)  Such unsupported statements do not cross "the line between possibility

---

[10]  Plaintiff submitted a number of extra-complaint materials with its Opposition to Defendant's Motion for Judgment on the Pleadings, including several declarations and exhibits.  Although such documents provide more context for Plaintiff's claim that Noridian's actions were improper and unreasonable, they were not included with the Complaint, and do not meet the criteria for judicial notice.  However, even if the Court were to consider such documents, it finds that such materials do not change the outcome of this decision.

and plausibility of 'entitlement to relief'" and are consequently subject to dismissal.  *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557)).

Walkell's tortious interference with prospective economic advantage and negligence claims must be dismissed because Walkwell fails to provide non-conclusory factual content to plausibly suggest it is entitled to relief.  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  Further, Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings states only that Plaintiff "sufficiently asserted allegations and cognizable legal theories as to Counts . . . 2 and 3," but does not provide any analysis or argument to support its claims for tortious interference with prospective economic advantage and negligence.  (Dkt. 22, p. 2.)  Walkwell accordingly fails to state a plausible tort claim.

## ORDER

Based on the forgoing, the Court finds Plaintiff has failed to allege facts sufficient to state a claim for relief.

**THEREFORE IT IS HEREBY ORDERED** that Defendant's Motion for a Judgment on the Pleadings (Dkt. 18) is **GRANTED** and Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**.

As Defendant's counterclaim is still at issue, this case remains open and counsel are directed to file a joint litigation plan on or before January 31, 2014.

**SO ORDERED**.



DATED: January 13, 2014

Edward J. Lodge
United States District Judge